1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MONICA GUTIERREZ PEDROZA,                    Case No.  1:24-cv-00868-JLT-BAM

12              Plaintiff,                         FINDINGS AND RECOMMENDATIONS
                                                  REGARDING PLAINTIFF'S MOTION FOR
13        v.                                       SUMMARY JUDGMENT OR REMAND

14   COMMISSIONER OF SOCIAL                        (Docs. 12, 14)
     SECURITY,
15
                Defendant.
16

17                            **Findings and Recommendations**

18                                    **INTRODUCTION**

19        Plaintiff Monica Gutierrez Pedroza ("Plaintiff") seeks judicial review of a final decision

20   of the Commissioner of Social Security ("Commissioner") denying her application for

21   supplemental security income under Title XVI of the Social Security Act.  The matter is currently

22   before the Court on the parties' briefs, which were submitted without oral argument, to

23   Magistrate Judge Barbara A. McAuliffe for the issuance of findings and recommendations.

24        Having considered the briefing and record in this matter, the Court finds that the decision

25   of the Administrative Law Judge ("ALJ") is supported by substantial evidence as a whole and is

26   based upon proper legal standards.  Accordingly, it will be recommended that Plaintiff's motion

27   for summary judgment or remand be denied, the Commissioner's request to affirm the agency's

28   determination to deny benefits be granted, and that judgment be entered in favor of the

                                              1

1    Commissioner of Social Security.

2    **FACTS AND PRIOR PROCEEDINGS**

3    Plaintiff filed an application for supplemental security income on May 18, 2021. AR 10,

4    263-65, 266-74.[1] Plaintiff alleged she became disabled on April 30, 2018, due to high blood

5    pressure, arthritis, and sciatic nerve. AR 315. Plaintiff's application was denied initially and on

6    reconsideration. AR 93-97, 112-16. Subsequently, Plaintiff requested a hearing before an ALJ,

7    and following a hearing, ALJ Young Bechtold issued an order denying benefits on October 18,

8    2023. AR 7-24, 37-54. Thereafter, Plaintiff sought review of the decision, which the Appeals

9    Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This

10   appeal followed.

11   **Relevant Hearing Testimony and Medical Record**

12   The relevant hearing testimony and medical record were reviewed by the Court and will

13   be referenced below as necessary to this Court's decision.

14   **The ALJ's Decision**

15   On October 18, 2023, using the Social Security Administration's five-step sequential

16   evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security

17   Act. AR 7-24. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful

18   activity since May 18, 2021. AR 12. The ALJ identified the following severe impairments:

19   lumbar degenerative disc disease; obesity; and hypertension. AR 12-13. The ALJ determined

20   that Plaintiff did not have an impairment or combination of impairments that met or medically

21   equaled any of the listed impairments. AR 13-14. Based on a review of the entire record, the

22   ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium

23   work, except she could occasionally climb ramps or stairs, but never climb ladders, ropes, or

24   scaffolds, could occasionally stoop, kneel, crouch, and crawl, and must avoid work in extremely

25   cold and/or damp environments. AR 14-21. With this RFC, the ALJ determined that Plaintiff

26   was unable to perform any past relevant work, but there were other jobs in the national economy

27   _____

28   [1] References to the Administrative Record will be designated as "AR," followed by the
     appropriate page number.

2

1  that she could perform, such as hand packer, packing machine operator, and assembler,

2  automobile.  AR 21-24.  The ALJ therefore concluded that Plaintiff had not been under a

3  disability since May 18, 2021, the date the application was filed.  AR 24.

4  **SCOPE OF REVIEW**

5        Congress has provided a limited scope of judicial review of the Commissioner's decision

6  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

7  this Court must determine whether the decision of the Commissioner is supported by substantial

8  evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla,"

9  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

10  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

11  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

12  The record as a whole must be considered, weighing both the evidence that supports and the

13  evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995

14  (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the

15  proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This

16  Court must uphold the Commissioner's determination that the claimant is not disabled if the

17  Commissioner applied the proper legal standards, and if the Commissioner's findings are

18  supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

19  509, 510 (9th Cir. 1987).

20  **REVIEW**

21        In order to qualify for benefits, a claimant must establish that he or she is unable to engage

22  in substantial gainful activity due to a medically determinable physical or mental impairment

23  which has lasted or can be expected to last for a continuous period of not less than twelve months.

24  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental

25  impairment of such severity that he or she is not only unable to do his or her previous work, but

26  cannot, considering his or her age, education, and work experience, engage in any other kind of

27  substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882

28  F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v.*

1  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

2  **DISCUSSION**[2]

3      Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence

4  because the ALJ failed in her duty to complete the record and obtain an updated opinion of

5  Plaintiff's physical RFC from an examining physician.  (Doc. 12 at 3.)  Plaintiff also argues that

6  the ALJ failed to offer any reason for rejecting Plaintiff's subjective complaints.  (*Id.*)

7      **A.  Residual Functional Capacity**

8      Plaintiff appears to argue that because the ALJ found the opinions of the consultative

9  examiner and state agency physicians unpersuasive, the RFC is not supported by substantial

10  evidence.  (Doc. 12 at 5-6.)

11      To the extent Plaintiff is arguing that the RFC must mirror a medical opinion, this

12  argument is not persuasive.  An RFC "is the most [one] can still do despite [his or her]

13  limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a

14  single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We

15  will assess your residual functional capacity based on all of the relevant medical in your case

16  record.").  Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated

17  by the ALJ based on all relevant evidence."  *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022

18  WL 2307594, at *3 (E.D. Cal. June 27, 2022); *see Gonzalez v. Kijakazi*, No. 1:21-cv-01676-SKO,

19  2023 WL 6164086, at *6 (E.D. Cal. Sept. 21, 2023) ("The nature of the ALJ's responsibility is to

20  interpret the evidence of record, including medical evidence."); *Mills v. Comm'r of Soc. Sec.*, No.

21  2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the

22  ALJ's responsibility to formulate an RFC that is based on the record as a whole, ... the RFC need

23  not exactly match the opinion or findings of any particular medical source."); *accord Macias v.*

24  *O'Malley*, No. 1:22-cv-01283-JLT-SKO, 2024 WL 51352, at *7 (E.D. Cal. Jan. 4, 2024)

25  (rejecting argument that ALJ's conclusion "must mirror one specific medical opinion"), report

26  

27  [2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider

28  the argument or brief.

4

1   and recommendation adopted, No. 1:22-CV-1283 JLT SKO, 2024 WL 246173 (E.D. Cal. Jan. 23,

2   2024).

3          Plaintiff also suggests that in developing the RFC the ALJ interpreted raw medical data

4   and made medical judgments.  (Doc. 12 at 5.)  However, Plaintiff does not cite any "raw medical

5   data" that the ALJ interpreted in developing the RFC.  Further, the ALJ did not make medical

6   judgments by improperly substituting his own opinion for a medical opinion.  Rather, the ALJ

7   expressly considered the consultative orthopedic evaluation completed by Dr. Dale H. Van Kirk

8   and the prior administrative medical findings of the state agency physicians, Dr. A. Khong and

9   Dr. L. DeSouza.  AR 18-21.  Upon evaluation, the ALJ found that these opinions were of "very

10  limited persuasion."  AR 18, 20. Plaintiff contends that the ALJ's evaluation of the consultative

11  examiner's opinion and the prior administrative findings of the state agency physicians is

12  unsupported by the record.  (Doc.12 at 6.)

13         Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the

14  agency's newer regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. §

15  416.920c.  Under these regulations, the Commissioner does "not defer or give any specific

16  evidentiary weight, including controlling weight, to any medical opinion(s) or prior

17  administrative medical finding(s), including those from [a claimant's] medical sources." 20

18  C.F.R. § 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical opinions

19  based on the following factors: (1) supportability; (2) consistency; (3) relationship with the

20  claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source

21  has familiarity with the other evidence in the claim or an understanding of our disability

22  program's policies and evidentiary requirements."  20 C.F.R. § 416.920c(c)(3)(1)-(5).

23  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(b)(2).

24  Supportability means the extent to which a medical source supports the medical opinion by

25  explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1); *see also*

26  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).  Consistency means the extent to which a

27  medical opinion is "consistent ... with the evidence from other medical sources and nonmedical

28  sources in the claim."  20 C.F.R. § 416.920c(c)(2); *Woods*, 32 F.4th at 792.

1    Ninth Circuit case law preceding the new regulations afforded deference to the medical

2    opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth

3    Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for

4    rejecting the medical opinions of treating or examining physicians.  These standards of

5    articulation no longer apply in light of the new regulations.  As explained by the Ninth Circuit in

6    *Woods*:

> The revised social security regulations are clearly irreconcilable with our caselaw
> according special deference to the opinions of treating and examining physicians
> on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a)
> ("We will not defer or give any specific evidentiary weight, including controlling
> weight, to any medical opinion(s) ..., including those from your medical
> sources."). Our requirement that ALJs provide "specific and legitimate reasons"
> for rejecting a treating or examining doctor's opinion, which stems from the
> special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is
> likewise incompatible with the revised regulations. Insisting that ALJs provide a
> more robust explanation when discrediting evidence from certain sources
> necessarily favors the evidence from those sources—contrary to the revised
> regulations.

14   *Id.* at 792.  The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject

15   an examining or treating doctor's opinion as unsupported or inconsistent without providing an

16   explanation supported by substantial evidence."  *Id.* at 792. "The agency must 'articulate ... how

17   persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. §

18   404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in

19   reaching these findings, *id.* § 404.1520c(b)(2)."  *Id.*; *see also* 20 C.F.R. § 416.920c(b).  For the

20   reasons that follow, the Court finds that the ALJ appropriately evaluated the persuasiveness of the

21   consultative examiner's opinion and the prior administrative medical findings of the state agency

22   physicians.

23   On September 11, 2021, the consultative examiner, Dr. Van Kirk, completed a

24   consultative orthopedic evaluation.  AR 448-52.  On examination, Plaintiff's tandem walking

25   with one foot in front of the other was satisfactory.  She was able to get up on her toes and her

26   heels, and was able to squat about halfway down but could go no further because of low back

27   pain.  AR 450.  She had full range of motion of her cervical spine, hips, knees, ankles, shoulders,

28   elbows, wrists, and fingers/thumbs.  AR 450-51.  Her main pain was in the mid-lumbar spine area

1    radiating into the buttocks bilaterally.  She was able to bend over to within 8 inches of touching

2    the floor with her long fingers.  AR 450.  Her motor strength and sensation were normal in the

3    upper and lower extremities.  AR 451.  Dr. Van Kirk diagnosed "[c]hronic lumbosacral

4    musculoligamentous strain/sprain associated with x-ray changes of the lumbar spine dated May

5    21, 2014."  AR 451.  The x-ray showed "mild spondylosis L4-L5 level; mild disk height loss at

6    L5-S1."  AR 448.  Dr. Van Kirk opined that Plaintiff should be able to stand and/or walk for six

7    hours out of an eight-hour day and had no sitting limitations.  AR 451.  She should be able to lift

8    and carry 10 pounds frequently, 20 pounds occasionally, "because of chronic low back pain with

9    restricted range of motion of the lumbar spine."  AR 452.  She was limited to only occasional

10   postural activities and should not be required to work in an extremely cold and/or damp

11   environment because her symptoms are enhanced with cold weather.  *Id.*

12        In evaluating the persuasiveness of Dr. Van Kirk's opinion, the ALJ explained as follows:

> Dr. Van Kirk's opinion is of very limited persuasion as the assessed limitations
> were not adequately supported by the minimal objective examination findings or
> the outdated x-ray report he reviewed which documented only mild abnormalities
> in 2014 (*see*, Exhibit 1F, p. 19.)  Furthermore, Dr. Van Kirk correlated the 2014
> imaging with the current diagnosis of musculoligamentous strain/sprain, which
> presents an unconvincing association between evidence and effect.  The current
> evidence documents her symptoms responsive to medications and physical
> therapy (*see*, Exhibit 8F, pp. 18, 45), despite her report to the examiner omitting
> pain medications she is taking and stating physical therapy was not beneficial.
> Specifically, the claimant stated that medications have been working well for her
> (Exhibit 8F, p. 18) and she noted improvement with physical therapy and
> Tramadol (Exhibit 8F, p. 45).  The claimant has also reported improvement in
> daily physical activities (Exhibit 7F, p. 18)[.]

20   AR 20-21.

21        On October 29, 2021, Dr. A. Khong, a state agency consultant, opined at the initial

22   determination level that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds

23   frequently, could stand and/or walk about 6 hours in an 8-hour workday, and could sit about 6

24   hours in an 8-hour workday.  AR 67.  Dr. Khong further opined that Plaintiff could occasionally

25   climb ramps/stairs, but never climb ladders/ropes/scaffolds, and could occasionally stoop, kneel,

26   crouch, and crawl.  AR 68.  On April 21, 2022, Dr. L. DeSouza, a state agency consultant, opined

27   on reconsideration that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds

28   frequently, could stand and/or walk about 6 hours in an 8-hour workday, and could sit about 6

1    hours in an 8-hour workday.  AR 85.  Dr. DeSouza further opined that Plaintiff could

2    occasionally climb ramps/stairs, but never climb ladders/ropes/scaffolds, and could occasionally

3    stoop, kneel, crouch, and crawl.  AR 85-86.

4         The ALJ considered the persuasiveness of these prior administrative findings and

5    reasoned as follows:

6         The Disability Determination Service medical opinions are of very limited
          persuasion as these consultants did not review relevant evidence showing the
7         claimant's symptoms are generally well controlled with conservative modalities
          including physical therapy and medications.  Although the consultants addressed
8         hypertension, obesity, and low back pain, the exertional limitations overstate
          exertional restrictions as the strength findings, joint range of motion, and
9         sensation findings are not as limiting as these consultants assessed.  With the
          claimant's symptoms under good control, the evidence supports no less than
10        medium exertional functioning.

11   AR 19.

12        In challenging the ALJ's evaluation of the medical opinion evidence, Plaintiff argues that

13   the ALJ's statement that the opinions of the consultative examiner and state agency medical

14   consultants were inconsistent with the recent evidence showing that Plaintiff's condition

15   improved with treatment is "wholly unsupported by the record."  (Doc. 12 at 6.)  To illustrate,

16   Plaintiff points out that while the ALJ stated the evidence showed Plaintiff's condition improved

17   with physical therapy, the only physical therapy treatment in the record occurred in 2021 *before*

18   the consultative examination and the state agency consultants' review.  (*Id.*, citing AR 457-99

19   [physical therapy records from September 2020 through October 2021]).  Plaintiff thus contends

20   that the ALJ is "unable to point to any evidence that supports his conclusion that her conditions

21   improved after the medical opinions were issued."  (*Id.*)

22        Even accepting Plaintiff's argument regarding the dates of her physical therapy treatment,

23   the record includes Plaintiff's report in October 2022 that she "[h]as noted some improvement

24   with physical therapy and Tramadol," which was *after* the consultative examination and the state

25   agency consultants' review.  AR 641.  Plaintiff's argument therefore fails.  Further, with respect

26   to the consultative examination, Plaintiff fails to address the ALJ's determination that the

27   consultative examiner's opinion was not adequately supported given the examiner's minimal

28   objective examination findings and review of an outdated x-ray report that documented only mild

8

1    abnormalities in 2014.  AR 20 (citing AR 404).  Plaintiff also fails to address the ALJ's

2    contrasting of the examiner's opinion with Plaintiff's statements that medications had been

3    working well for her (AR 614), she noted improvement with physical therapy and Tramadol (AR

4    641), and she reported improvement in daily physical activities (AR 577), all of which speak to

5    the consistency of the opinion with other sources in the record.  AR 21.

6        With respect to the state agency consultants, Plaintiff fails to address the ALJ's

7    determination that recent evidence showed Plaintiff's condition was generally well controlled

8    with medications, which also speaks to the consistency of their opinions with other evidence in

9    the record.  AR 19.  According to the record, in July 2022, Plaintiff had improved control of her

10   blood pressure with medication compliance.[3]  AR 18, 667-69.  Similarly, in August 2022,

11   Plaintiff reported compliance with her medications and feeling that her blood pressure was better

12   controlled.  Her physician noted that her blood pressure was "much better controlled."  AR 15,

13   662-65.  In October 2022, Plaintiff noted "some improvement with physical therapy and

14   tramadol."  AR 17, 641.  In February 2023, Plaintiff reported that "medications have been

15   working well for her."  AR 17, 614.

16       Plaintiff also fails to address the ALJ's finding that the state agency consultants overstated

17   the exertional limitations because the strength findings, joint range of motion, and sensation

18   findings were not as limiting as assessed, which speaks to the supportability of the findings.  AR

19   19.  As to this latter determination, the ALJ indicated that on reconsideration Dr. DeSouza "noted

20   that the updated evidence showed ongoing complaints of back pain, but the examination findings

21   do not support greater limitations.  For example, the claimant demonstrated normal unassisted

22   ambulation, decreased range of motion of the lumbar spine, but full range of motion in all other

23   joints, as well as full motor strength and intact sensation."  AR 19, 83.

24       For the reasons stated, the Court finds that the ALJ did not err in his evaluation of the

25   _____

26   [3] In challenging the ALJ's assessment of the opinions of the consultative examiner and state agency
     medical consultants, Plaintiff contends that "the ALJ spent the majority of the decision focusing on
     Plaintiff's lack of adherence to prescribed treatment without ever accounting for the reasons why Plaintiff
27   elected not to."  (Doc. 12 at 6.)  However, the ALJ did not cite lack of adherence to prescribed treatment in
     evaluating the *persuasiveness* of the medical opinions or prior administrative medical findings.  *See* AR
28   19, 20-21.

consultative examiner's opinion and the prior administrative medical findings.

## B.  Duty to Develop the Record

Plaintiff next argues that the ALJ's rationale for finding the opinions of the consultative examiner and state agency consultants not persuasive "should have triggered the ALJ's duty to develop the record and obtain an updated opinion of Plaintiff's conditions, given he stated there was a change in the severity of her condition."  (Doc. 12 at 7.)  The Court disagrees.

It is Plaintiff's burden to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A). ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a), 416.912(a) ("[Y]ou have to prove to us that you are ... disabled ...."); *Wagner v. Comm'r of Soc. Sec.*, No. 1:22-cv-01566-CDB, 2024 WL 1312214, at *9 (E.D. Cal. Mar. 27, 2024) (acknowledging plaintiff's burden to establish disability).  An ALJ's duty to develop the record is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Here, there is no indication that the record was inadequate or ambiguous, such that it triggered the ALJ's duty to further develop the record.  The record in this case included Plaintiff's testimony, her treatment records, the consultative examiner's opinion, and the prior administrative medical findings, all of which were summarized by the ALJ.  AR 14-21, 42-48, 50-51, 55-72, 74-91, 448-52.  Absent any inadequacy or ambiguity, the ALJ was not required to request an updated consultative examination.  *See*, *e.g.*, *LeBeouf v. Saul*, No. 1:19-cv-00201-BAM, 2020 WL 5702240, at *10-11 (E.D. Cal. Sept. 24, 2020) (concluding ALJ was not required to request a consultative examination in part because the "record contained what appears to be Plaintiff's complete treatment records, which supported the ALJ's finding and did not present an ambiguity or inadequacy."); *see also Wagner*, 2024 WL 1312214, at *9-10 (determining absence of opinion from treating or examining physician did not give rise to duty to develop record where

1   record contained opinions of state agency medical consultants, plaintiff's testimony, and

2   plaintiff's complete medical records).  Moreover, the ALJ held the record open after the hearing

3   for Plaintiff to supplement with additional records.  AR 40.  An ALJ can discharge the duty to

4   develop the record further by "keeping the record open after the hearing to allow supplementation

5   of the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); *Tidwell v. Apfel*, 161

6   F.3d 599, 602 (9th Cir. 1989) (ALJ satisfied duty to develop the record by keeping record open

7   for supplementation).

8   **C. Subjective Testimony**

9   Plaintiff next argues that the ALJ failed to offer sufficient reasons for rejecting Plaintiff's

10  subjective complaints.  (Doc. 12 at 7-8.)

11  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a

12  two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of*

13  *Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective

14  medical evidence of his impairment that could reasonably be expected to produce some degree of

15  the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step

16  and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding

17  the severity of his symptoms only by offering specific, clear and convincing reasons for doing so.

18  *Id.* at 1015.

19  Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably

20  be expected to cause the alleged symptoms, but discounted her statements concerning the

21  intensity, persistence and limiting effects of those symptoms.  AR 18.  The ALJ was therefore

22  required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective

23  complaints.

24  The Court finds that the ALJ provided specific, clear, and convincing reasons for

25  discounting Plaintiff's subjective complaints.  First, the ALJ concluded that Plaintiff's subjective

26  allegations were not supported by the objective evidence.  AR 21.  Although lack of supporting

27  medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ

28  can consider.  *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Here, the ALJ explained

11

1    that Plaintiff's testimony at the hearing was not persuasive or consistent with the objective

2    evidence, such as the benign physical examination findings throughout the record.  AR 21.

3        Second, the ALJ discounted Plaintiff's subjective complaints based on her activities of

4    daily living.  AR 21.  An ALJ may properly discount a claimant's subjective complaints when the

5    daily activities demonstrate an inconsistency between what the claimant can do and the degree

6    that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may

7    consider "whether the claimant engages in daily activities inconsistent with the alleged

8    symptoms"), superseded by regulation on other grounds. Here, the ALJ determined that Plaintiff's

9    activities of daily living were "not consistent with one who suffers such severe limitations as to

10   preclude all work activity as she lives alone and tends to all of her needs without assistance."  AR

11   21, 42.  Plaintiff does not challenge this reason for discounting her subjective complaints.  (*See*

12   Doc. 12 at 7-8.)  Further, even where a plaintiff's activities suggest some difficulty functioning,

13   the activities may be grounds for discrediting the claimant's testimony to the extent that they

14   contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113.  The ALJ also

15   noted that Plaintiff had been looking for work and intended to return to past employment but for

16   the building catching fire.  AR 21, 43-44.

17       Third, the ALJ discounted Plaintiff's allegations based on the effectiveness of treatment.

18   AR 21.  The effectiveness of medication or treatment is a relevant factor in determining the

19   severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Wellington v.*

20   *Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully

21   relieving symptoms can undermine a claim of disability.").  Here, the ALJ found that Plaintiff's

22   impairments had been "responsive to treatment when she is compliant and do not impose a

23   disabling degree of limitation."  AR 21.  As an example, the ALJ indicated that when Plaintiff

24   attended physical therapy, she demonstrated good exercise tolerance.  AR 21; *see also* AR 16,

25   478 ("Pt. demonstrates good tolerance to ther ex without adverse effects or symptom

26   provocation.").  As another example, the ALJ noted that when Plaintiff started taking her blood

27   pressure medications consistently, her blood pressure improved drastically.  AR 21; *see also* AR

28   18, 662-65, 667-69.

1    Fourth, the ALJ discounted Plaintiff's allegations based on her failure to follow prescribed

2    treatment.  AR 21.  An unexplained or inadequately explained failure to follow a prescribed

3    course of treatment may support the discounting of pain allegations.  *See Bunnell v. Sullivan*, 947

4    F.2d 341, 346 (9th Cir. 1991); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

5    Relevant here, the ALJ noted that at times, Plaintiff "has refused recommended treatment even

6    though she has been advised such treatment could relieve her symptoms and allow her to return to

7    work."  AR 21; *see also* AR 15, 598 (12/7/21; "Chronic Back pain : . . . Does not [want] to see

8    neuroSx.  Want to see PT"); 681 (4/5/2022; "Again rec her to see neuroSx as she can not continue

9    on disability long time.  If Sx can help her then after Sx she will be able to work.").  The ALJ

10    further explained:

11        The evidence shows that the claimant was aware of the treatment plan her
12        physician determined she must follow.  This treatment plan, as set for by her
          treating physicians, was clearly expected to relieve her subjective symptoms to
          allow her to work.  The evidence of record also indicates the claimant has refused
13        to follow prescribed treatment for some time and was counseled regarding her
          noncompliance.  The claimant did not have an acceptable reason for failure to
14        follow prescribed treatment pursuant to 20 CFR 416.930.  Evidence that the
          claimant has not been entirely compliant in taking prescribed medications[ ] also
15        suggests that the symptoms may not have been as limiting as she alleged.

16    AR 21.

17        The ALJ additionally noted that Plaintiff's statements about the intensity, persistence, and

18    limiting effects of her symptoms were inconsistent with the medical record showing "poor

19    compliance with hypertension treatment, but when she is complaint, she experiences

20    improvement to her blood pressure and reportedly feels better."  AR 18; *see also* AR 18, 662-65,

21    667-69.  The ALJ also noted that with regard to her back complaints, the evidence "shows she

22    preferred physical therapy and medications to treat her symptoms, but did not attend physical

23    therapy as scheduled.  She continued to request referrals to physical therapy, but failed to follow

24    through with initiating treatment."  AR 18 *see also* AR 16, 682 (4/25/2022; "Does not want to see

25    neuroSx.  Want to see PT, referral sent."); AR 17, 709 (9/12/2022; "Of note, this is pt's third

26    [physical therapy] case with our company, out of 13 visits, she only came to 3, 2 of which were

27    evaluations.  She was told there would likely not be a change with only one treatment visit."); 619

28    (1/11/2023 request for physical therapy referral; "Stated she was previously following them,

13

however did not have issues with transportation, so was unable to keep up with appointments.')
108, 602 (5/19/2023; request for physical therapy), 605 (5/19/2023; "rec to start PT soon and will
do MRI after that and neuroSx as she need to take care of her s/s and start working again.")

Plaintiff argues that the record contains notations of the reasons why she failed to follow
the prescribed treatment that were not considered by the ALJ, including an inability to afford or
keep medications due to homelessness, feeling better without the medications due to side effects,
and that she was "not convinced" of the side effects of her condition. (Doc. 12 at 6-7, 8.) To
support this argument, Plaintiff cites a May 2023 treatment note that contains information from a
treatment encounter on December 7, 2021, indicating that she had "so many reasons as why she
does not take rx." (*Id.* at 6-7, citing AR 602). Although Plaintiff may have had "many reasons"
for not taking her blood pressure medication in December 2021, the record reflects that she was
later compliant with her hypertension medications and her blood pressure improved in 2022. AR
18, 662-65 (August 2022), 667-69 (July 2022). Further, any reason for not taking blood pressure
medications in December 2021 does not explain why Plaintiff failed to attend physical therapy or
follow through with the neurology consultation.

Moreover, the ALJ expressly found that Plaintiff did not have an acceptable reason for
failure to follow prescribed treatment pursuant to 20 C.F.R. § 416.930. Examples of good
reasons for not following treatment under the regulations include: (1) the specific medical
treatment is contrary to the established teaching and tenets of the claimant's religion; (2) the
prescribed treatment would be cataract surgery for one eye when there is an impairment of the
other eye resulting in a severe loss of vision and is not subject to improvement through treatment;
(3) surgery was previously performed with unsuccessful results and the same surgery is being
recommended for the same impairment; (4) the treatment because of its enormity, unusual nature,
or other reason is very risky; or (5) the treatment involves amputation of an extremity, or a major
part of an extremity. 20 C.F.R. § 416.930(c). None of these reasons applies to Plaintiff's failure
to comply with recommended treatment.

The Court concludes that the ALJ provided specific, clear, and convincing reasons for
discounting Plaintiff's subjective complaints. Even if one of the reasons for discounting those

14

1  complaints was invalid, any such error is harmless because the ALJ provided other valid reasons

2  for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

3  F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's

4  testimony were harmless error where the ALJ articulated two other reasons supported by

5  substantial evidence in the record); *Molina*, 674 F.3d at 1115 ("several of our cases have held that

6  an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving

7  a claimant's testimony, but also provided valid reasons that were supported by the record").

8  **CONCLUSION AND RECOMMENDATION**

9  Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

10  evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS

11  HEREBY RECOMMENDED as follows:

12  1.  Plaintiff's motion for summary judgment or remand (Doc. 12) and appeal from the

13  agency's decision be denied.

14  2.  The Commissioner's request to affirm the agency decision (Doc. 14) be granted.

15  3.  The Clerk of the Court be directed to enter judgment in favor of Defendant

16  Commissioner of Social Security, and against Plaintiff Monica Gutierrez Pedroza.

17

18  ***

19  These Findings and Recommendations will be submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

21  **fourteen (14) days** after being served with these Findings and Recommendations, the parties may

22  file written objections with the court.  The document should be captioned "Objections to

23  Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed**

24  **fifteen (15) pages or include exhibits**.  **Exhibits may be referenced by document and page**

25  **number if already in the record before the Court.  Any pages filed in excess of the 15-page**

26  **limit may not be considered.**  The parties are advised that failure to file objections within the

27  specified time may result in the waiver of the "right to challenge the magistrate's factual

28  ///

findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  __July 25, 2025__                         ____ /s/ *Barbara A. McAuliffe* ____
                                                  UNITED STATES MAGISTRATE JUDGE

16